IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANDY ALLEN, * | |
| * | |
| Plaintiff, * | |
| * | |
| vs. * | Civil Action No. ADC-16-2557 |
| * | |
| CAROLYN W. COLVIN, * | |
| Acting Commissioner, | |
| Social Security Administration, * | |
| * | |
| Defendant. * | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On July 13, 2016, Brandy Allen ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 14 and 15), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### PROCEDURAL HISTORY

On May 11, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on April 27, 2012. On May 15, 2012, Plaintiff also filed a Title XVI application for supplemental security income. Her claims were denied initially and upon reconsideration on July 31, 2012 and January 25, 2013, respectively. Subsequently, on March 5, 2013, Plaintiff filed a written request for a hearing and, on September

1

10, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). On January 30, 2015, the ALJ rendered a decision ruling that Plaintiff was not disabled under the Social Security Act. *See* ECF No. 11 at 27-46. Thereafter, on February 25, 2015, Plaintiff filed an appeal of the ALJ's disability determination and, on June 13, 2016, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On July 13, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's final decision.[1] On December 6, 2016, Plaintiff filed a Motion for Summary Judgment. On February 2, 2017, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment.

### STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court

---

[1] On March 29, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement

of 12 months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c), 416.909.

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); see Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96–8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R.

§ 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 27, 2012. ECF No. 11 at 32. At step two, the ALJ found that Plaintiff had the following severe impairments: fractures of lower limb and obesity. *Id.* The ALJ further found that the aforementioned impairments were expected to last a period of twelve months, thereby satisfying the duration requirement. *Id* at 33. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.*

At step four, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. She can also occasionally climb, balance, stoop, kneel, crouch and crawl. In addition, after sitting for ½ hour, the claimant needs the ability to stand for a couple of minutes, then returning to sitting and needs a cane to ambulate.

*Id.* Based on the resulting RFC, the ALJ then determined that Plaintiff was "unable to perform any past relevant work [.]" *Id.* at 38.

Finally, at step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 39. Thus, the ALJ concluded that, "[T]he claimant has not been under a disability, as defined in the Social Security Act, from April 27, 2012, through the date of this decision [.]" *Id* at 40.

## DISCUSSION

Plaintiff raises four allegations of error on appeal: (1) that the ALJ failed to consider whether Plaintiff was eligible for a closed period term of disability; (2) that the ALJ failed to

properly evaluate Plaintiff's obesity; (3) that the ALJ improperly discarded the treating physician's opinion without any persuasive contradictory evidence; and (4) that the ALJ's RFC determination was not supported by substantial evidence in the record. Each of Plaintiff's arguments lack merit and are addressed below.

**A. The ALJ properly evaluated Plaintiff's RFC pursuant to SSR 96-8p.**

To qualify for disability benefits, a claimant need not show that she is permanently or currently disabled at the time of the hearing. *See Miller v. Comm'r of Soc. Sec.*, No. 13 Civ. 6233, 2015 WL 337488, at *24 (S.D.N.Y. Jan. 26, 2015). The ALJ instead must evaluate whether a claimant has proven a disability for any consecutive twelve-month period between the alleged onset date and the date of the hearing. *See id; see also Calhoun v. Colvin*, 959 F.Supp.2d 1069, 1075 (N.D.Ill.2013) ("The disability inquiry must be made throughout the continuum that begins with the claimed onset date and ends with the hearing date"); *Sykes v. Comm'r, Soc. Sec.*, No. CV ELH-16-898, 2017 WL 35436, at *2 (D. Md. Jan. 4, 2017) ("the ALJ is charged with determining whether the claimant was disabled for any consecutive twelve-month period between the alleged onset date and the hearing date"). Failure to consider whether a closed period of disability exists may warrant remand. *See, e.g., Shiplett v. Colvin*, No. 5:15-cv-55, 2016 WL 6783270, at *13 (W.D. Va. Nov. 16, 2016) (remanding to determine whether a closed period is appropriate between a surgery and an EMG study revealing no active nerve root irritation); *Reynoso v. Astrue*, No. CV 10-4604, 2011 WL 2554210, at *5–7 (C.D. Cal. June 27, 2011) (remanding for the ALJ's failure to consider whether claimant had a closed period of disability prior to undergoing surgery); *Dounley v. Comm'r of Soc. Sec. Admin.*, No. 3:08-cv-1388, 2009 WL 2208021, at *8–9 (N.D.Tex. July 22, 2009) (remanding with instructions to consider

claimant's entitlement to a closed period where the ALJ relied on medical evidence generated after the surgery that permitted the claimant to work).

Plaintiff argues that the ALJ erred in failing to consider whether she was entitled to a closed period of disability. Specifically, Plaintiff contends that the ALJ should have found her disabled for a closed period following her accident in April 2012 and after her surgery in August 2012.

The evidentiary record does not support a finding that Plaintiff's injuries following her car accident in April 2012 were disabling. As the ALJ properly noted, University of Maryland Medical Center treatment records following Plaintiff's recovery from May 11, 2012 through December 5, 2012 revealed no notable issues and generally indicated that Plaintiff's injuries had been healing properly. *See* ECF No. 11 at 273-340. Additionally, the medical records from Plaintiff's follow-up visit on January 30, 2013 showed that the condition of Plaintiff's lower extremity had improved significantly by that date. *See* ECF No. 11 at 349 ("Bilateral lower extremity wounds are all well healed."); ("Left hip, knee, and ankle range of motion are excellent left with crepitus due to scar tissue noted at the knee joint with motion. Right lower extremity motor and neuro intact as well"); ("Radiographs: X-rays taken today show hardware intact with good fracture alignment."). Furthermore, a May 15, 2013 "fracture follow-up" examination of Plaintiff indicated that the injuries Plaintiff sustained as a result of the April 2012 accident had since healed. *See* ECF No. 11 at 368 ("[Plaintiff] has healed femoral neck fractures, femoral shaft fractures, the knee fractures, as well as a healed talus fracture. She has been doing relatively well."); ("Radiographs demonstrate a healed femoral neck and femoral shaft fractures bilaterally."). Plaintiff also continued to show normal sensation with full knee, hip, and ankle range of motion bilaterally. *See id.* ("On exam today, [Plaintiff] has normal sensation in her

peroneal tibial nerve root distributions bilaterally, full knee, hip, and ankle range of motion bilaterally."). In sum, the record contains substantial evidence to support the ALJ's ultimate determination that Plaintiff was not disabled for a closed period of time following her surgery.

Plaintiff correctly points out that the medical records establish that she was prescribed and made use of a walker during the initial stages of her recovery from surgery in August 2012. However, the sole fact that Plaintiff used a walker is not enough to prove disability, *see Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]."), and as the Fourth Circuit has previously noted, it is the ALJ's responsibility rather than the Court's, "to reconcile inconsistencies in the medical evidence." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976). Despite Plaintiff's continued use of a walker during the relevant time period, there is no indication from Plaintiff's doctors that the use of such a device was necessary beyond the initial post-surgery period or for a consecutive twelve-month period following her injury. In fact, contemporaneous treatment records indicate the opposite, that beginning as early as January 2013, Plaintiff's doctors saw no need to restrict Plaintiff's weight-bearing in the lower extremities. *See* ECF No. 11 at 349 ("Plan: The patient will follow up in our clinic in 3 months. *She will continue weightbearing as tolerated with no restrictions.* She is given updated script for physical therapy for range of motion, gait training, and general conditioning." (emphasis added)); *see also id.* at 368 ("We will continue [Plaintiff] *weightbearing as tolerated* in her bilateral lower extremities." (emphasis added)). Thus, the medical record is inconsistent with Plaintiff's contention that she was unable to stand or walk without the help of a walker during the time period in question.

Moreover, although Plaintiff reported on December 20, 2012 that she still used a cane and a wheelchair, the ALJ properly noted in his opinion that neither device was specifically prescribed by her doctor. *Id.* at 242. The ALJ nevertheless accounted for Plaintiff's continued use of a cane in his determination of Plaintiff's RFC, stating that "[claimant] needs a cane to ambulate." *Id.* at 33. Therefore, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff was not entitled to a closed period of disability despite Plaintiff's use of various assistive devices following her surgery.

To the extent Plaintiff claims that the ALJ erred in failing to explicitly deny a closed period of disability, that argument also fails. The ALJ found that Plaintiff was not disabled at any time from her alleged onset date of April 27, 2012, through the date of the decision. *Id.* at 40. Thus, it is implicit in the ALJ's final determination that Plaintiff also was not entitled to a closed period of disability at any time during that time frame. *See Atwood v. Astrue*, No. 5:11CV002-RLV-DSC, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011) (finding that the ALJ was not required to explicitly deny a closed period of disability where ALJ explicitly determined that the claimant was not disabled from the alleged onset date through the date of the disability decision). Consequently, Plaintiff's first allegation of error fails.

**B. The ALJ properly addressed and accounted for Plaintiff's "severe" obesity.**

According to Plaintiff, the ALJ failed to properly evaluate her obesity. This argument lacks merit. In considering the record, the Court finds that the ALJ properly addressed Plaintiff's "severe" obesity and accounted for the limitations arising from it in his determination of Plaintiff's RFC.

Social Security Ruling ("SSR") 02–01p explains the administration's policies for evaluating a claimant's obesity. SSR 02–01p mandates that the ALJ consider both the individual

and cumulative effects of obesity at steps two through five of the five-step inquiry. SSR 02–1p, 2000 WL 628049, at *3–7 (Sept. 12, 2002); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2002) ("when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.").

The ALJ's decision expressly considered the effects of Plaintiff's obesity at steps two through five. ECF No. 11 at 32-40. At step two, the ALJ classified Plaintiff's obesity and fractures to the lower limb as severe impairments. *Id.* at 32. In doing so, the ALJ noted that Plaintiff's body mass index ("BMI") of greater than 33 positively indicated that Plaintiff's obesity was a severe impairment.[2] Plaintiff contends that the ALJ should have classified Plaintiff's obesity as extreme based on the high-level BMI calculations in the record. Plaintiff's contention is inconsistent with SSR 02-1p, which instructs that:

> [t]here is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p ("When Is Obesity a "Severe" Impairment?"). Thus, the ALJ committed no error in determining that Plaintiff's obesity was severe at step two.

After establishing that Plaintiff suffered from severe obesity, the ALJ then described the requirements of SSR 02–1p in detail, specifically noting that:

> obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. If

---

[2] The ALJ's BMI calculation was based on the evidence in the record indicating that Plaintiff had a height of 5 foot 7 ½ inches and weighed between 250 and 278 pounds.

12

the obesity is of such a level that it results in an inability to ambulate effectively, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria).

ECF No. 11 at 37. Under this framework, the ALJ then explained:

In the present case, I have considered whether the severity of the claimant's obesity meets or equals a listing, but find that *the claimant does not suffer from an inability to ambulate effectively.* Furthermore, the claimant does not have any significant pulmonary or heart problems to associate with the obesity. Accordingly the claimant's obesity does not meet or equal a listing. However, I note that I have considered any symptoms the claimant has from her obesity, combined with all of the symptoms from her severe impairments, when determining her residual functional capacity.

*Id* (emphasis added). Plaintiff argues that the ALJ's determination that "the claimant does not suffer from an inability to ambulate effectively" was improper in light of the fact that Plaintiff used a walker and a cane. As discussed in Section 1 of this memorandum, the ALJ properly determined that Plaintiff did not require the assistance of a walker. *See supra* at part A. Furthermore, the ALJ's RFC determination accounted for Plaintiff's continued use of a cane for ambulation. *See* ECF No. 11 at 369.[3]

In determining Plaintiff's RFC at step four of the sequential evaluation, the ALJ primarily relied on the objective medical findings of Dr. W. Hakkarinen and Dr. Gurcharan Singh, each of whom considered and noted Plaintiff's obesity and determined that she was not disabled. *See* ECF No. 11 at Exhibits 2A, 4A, 6A, 8A. Thus, Plaintiff's argument that her obesity was not properly considered at step four of the ALJ's evaluation is without merit. *See Phelps v. Astrue,*

---

[3] The ALJ's conclusion that Plaintiff needed a cane to ambulate does not, in and of itself, indicate an inability to ambulate effectively. Section 1.00(B)(2)(b) of the Regulations states, in part, that "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) *that limits the functioning of both upper extremities.*" 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("What We Mean by Inability To Ambulate Effectively") (emphasis added). Therefore, Plaintiff's continued use of a cane to ambulate is consistent with the ALJ's determination that Plaintiff did not suffer from an inability to ambulate effectively.

2010 WL 3632730, at *6–7 (W.D.Va. Sept. 9, 2010) (rejecting the argument that the ALJ failed to consider her obesity appropriately under SSR 02–01p where the ALJ determined that the claimant's obesity was a severe impairment and relied on the opinions of two doctors, each of whom examined and noted claimant's height and weight).

Moreover, the ALJ's RFC determination included several limitations to account for the functional difficulties that resulted from Plaintiff's obesity and lower limb fractures. To account for Plaintiff's difficulty with prolonged walking, standing, and sitting, the RFC included a limitation that "[claimant can] stand and walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday." ECF No. 11 at 33. The ALJ also limited Plaintiff to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* ("[Claimant] can also occasionally climb, balance, stoop, kneel, crouch and crawl."). Both of these RFC limitations closely track the language in SSR 02–1p which lists the work limitations potentially caused by obesity. *See* SSR 02–1p, 2000 WL 628049, at *6. Thus, the Court rejects Plaintiff's contention that the ALJ ignored Plaintiff's obesity in his RFC finding. *See Richards v. Astrue*, No. 6:11-CV-00017, 2012 WL 5465499, at *8 (W.D. Va. July 5, 2012) (finding that the ALJ properly considered claimant's obesity in accordance with SSR 02–1p where there was no evidence in the record suggesting claimant's obesity was disabling or that it resulted in functional limitations that would require the ALJ to engage in a more detailed evaluation.)

Plaintiff correctly points out that a total failure to examine obesity in a disability hearing constitutes reversible error, *See Davis v. Astrue*, 2010 WL 424144, at *5–6 (W.D.Va. Feb. 3, 2010), but no such failure exists in the present case. Indeed, the ALJ clearly considered Plaintiff's obesity at steps two through five of the sequential evaluation, first by listing it as a severe impairment, then by discussing it extensively in his decision, and finally by incorporating

obesity-related functional limitations into Plaintiff's RFC. ECF No. 11 at 32-38. In summation, the ALJ plainly did not ignore Plaintiff's obesity and properly considered the evidence in accordance with SSR 02–1p. Consequently, Plaintiff's second allegation of error fails.

### C. The ALJ properly evaluated the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ, in determining Plaintiff's RFC, erroneously discredited the opinion of Plaintiff's treating physician, Dr. Lucy Donna King. Plaintiff contends that the ALJ's explanation for giving little weight to the opinion of Dr. King was not supported by the record evidence.

Section 404.1527 of the regulations governs an ALJ's consideration of the medical opinion given by a treating source. *See* 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including ... what [the claimant] can still do despite impairment(s)...." 20 C.F.R. § 404.1527(a)(2). Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (superseded by statute on other grounds). In such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment; (3)

supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2).

In this case the ALJ explicitly discussed the findings and conclusions of Dr. King and clearly articulated the reasons for giving her opinion little weight. With regard to the opinion of Dr. King, the ALJ stated as follows;

> An April 29, 2014 Medical Assessment of Ability to Do Work-Related Activities (Physical) was completed by Lucy Donna King, M.D, who noted she has treated the claimant since February 26, 2014. (Exhibit 16F). Dr. King indicated the claimant is limited to lifting and carrying less than 5 pounds; sitting, standing and walking for 15 minutes in an 8-hour workday; and is unable to sit for more than 5 minutes without experiencing severe pains to her lower back and hip. The assessment also indicated the claimant can occasionally climb, but never balance, stoop, crouch, kneel or crawl. The assessment further indicated the claimant has limited ability to reach, feel or push due to lower back and hip pain. In addition, the assessment indicated the claimant must avoid all exposure to extreme cold and even concentrated exposure to vibration. The assessment also concluded the claimant is unable to work in any capacity for more than 15 minutes in an 8-hour period. I find that this opinion is not supported by any evidence in the record, or even by the claimant's own testimony. The claimant testified she can take care of her personal needs and can walk one block; stand for 15 minutes; sit for 30 minutes; has limitation in bending and stooping; can climb 2-3 times a week; and can lift 10 pounds. Additionally, I find that this opinion is inconsistent with treatment records in Exhibit 17F, as noted above, indicating the claimant has normal gait and station. Moreover, I note that it appears that Dr. King only treated the claimant approximately three times prior to completing the April 29, 2014 assessment. As such, I accord little weight to this opinion.

ECF No. 11 at 38. Therefore, the ALJ's reasoning for assigning little weight to the opinion of Dr. King is clear. Furthermore, contrary to Plaintiff's contention, the ALJ's reasoning for doing so is

16

supported by substantial evidence in the record. Consequently, the Court rejects Plaintiff's third allegation of error.

### D. The ALJ's RFC decision was supported by substantial evidence.

Plaintiff lastly argues that the ALJ's RFC decision was not supported by substantial evidence. Plaintiff makes various contentions to support this allegation stating that "[t]here is no evidence that indicates that Ms. Allen could lift or carry 20 pounds while using a walker" and that "the ALJ fails to explain how he determine that [Plaintiff] could lift and carry 20 pounds or manage to stand an walk for 2 hours in an 8 hour work day." ECF No. 14-1 at 12. In addition, Plaintiff asserts that "[j]ust because [Plaintiff's] ... neck and femoral fractures have healed does not mean that [Plaintiff] does not have significant pain from these fractures in conjunction with her obesity that prevent her from working." *Id.* at 13.

As discussed previously in this opinion, the ALJ's determination that Plaintiff could stand and walk without the assistance of a walker was supported by substantial evidence in the record. Moreover, the ALJ properly designated Plaintiff's lower limb fractures and obesity as severe impairments and accounted for the effects of both impairments in his ultimate RFC determination. Therefore, Plaintiff's last allegation must fail.

### CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED,

and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: June 1, 2017

A. David Copperthite
United States Magistrate Judge